REQUESTED BY: Senator W. Owen Elmer Nebraska State Legislature
You have made a request for an opinion regarding the attachment of liability upon suppliers of fertilizers and pesticides, for their delivery of chemicals into storage tanks that are not in compliance with Title 198 of the Nebraska Department of Environmental Quality rules and regulations. Specifically, your inquiry refers to whether a non-owner of a storage tank (local fertilizer or chemical retailer, trucker, etc.) would be prohibited from delivering such chemicals given possible liabilities and restrictions imposed by Title 198, or other related laws.
Title 198 contains rules and regulations pertaining to agricultural chemical containment of liquid fertilizers and pesticides. See Title 198, Nebraska Administrative Code, Chapters 1 through 14. The primary purpose of the regulation is to prevent contamination from spills and leaks of these chemicals into the soil and groundwater. The regulations require a secondary containment facility to be constructed for bulk storage of liquid fertilizers and pesticides above certain minimum aggregate amounts. The title also mandates "loadout facilities" to be built to catch any spills that may result from the delivery of liquid fertilizers and pesticides prior to the transfer into storage tanks.
It is our normal practice to provide opinions to members of the Nebraska Legislature only with respect to questions pertaining to pending or proposed legislation. Op. Att'y Gen No. 157 (December 24, 1985). Your opinion request letter does not express any legislative purpose in connection with your liability question. However, from discussions with your staff we understand that legislation may be introduced in this area depending upon our response to your inquiry. Therefore, we will provide you with an opinion.
 DISCUSSION
Enforcement of the regulations included within Title 198 apply only to the owners and operators of the storage facilities. Chapters 2 and 3 of Title 198 provide the guidelines under which a secondary containment and loadout facility, respectively, are required. These construction requirements apply only to owners and operators of such facilities and there are no secondary requirements placed upon the suppliers of agricultural chemicals mentioned within Title 198. Enforcement, provided for in Chapter 10 of the title, is commenced only upon failure of the facility owner or operator to comply with the provisions contained within Title 198. Liability for improper storage does not apply to the non-owner suppliers and distributors of these chemicals.
Another consideration, is whether tort liability applies to non-owners of these facilities. The particular tort theory would involve an action for negligence. Negligence would be established on the part of a plaintiff against the non-owner defendant, if the plaintiff could prove the following four elements: (1) a duty was owed to the plaintiff by the defendant; (2) a breach of that duty; (3) a legally cognizable causal relationship was established between the breach and the harm suffered; and (4) damages. See Storage Tank Pollution, 5 A.L.R.5th 11. The main emphasis of the action lies with elements (1) and (2) which involve a finding of fault on the part of the non-owner defendant. Fault would apply if the non-owner supplier had a duty to refuse delivery of agricultural chemicals to storage tanks that were noncompliant under Title 198, but did so anyway in violation of this duty.
Courts are silent as to whether such a duty is present with regard to suppliers of liquid fertilizers and pesticides. However, courts have reached a consensus as to the existence of a duty involving the non-owner suppliers of petroleum products unloading hazardous products into storage tanks. Generally, no duty rests on a person who delivers gasoline to inspect the premises on which a storage tank is located before making delivery to the place provided for the purpose. See Gas and Oil, 38 Am.Jur.2d 716. The Nebraska Supreme Court has stated, ". . . a gas company which does not install, own, or control the pipes or appliances in a customers building is in no way responsible for the condition in which they are maintained, and consequently is not liable for injuries caused by a leak therein of which it has no knowledge. This rule is followed extensively in this country."Clay v. Butane Gas Corporation, 151 Neb. 876, 889-90,39 N.W.2d 813, 820 (1949). This statement leaves open the possibility of liability if knowledge is in fact present.
In other jurisdictions, a definite duty has been established if the petroleum supplier has notice that the storage tank is defective but endeavors to fill the tank despite such warnings. The Georgia Court of Appeals found that whenever a supplier of gas has actual knowledge of a defective and dangerous condition of a customer's underground storage tanks but continues to supply gas to them, the supplier is liable for injuries caused by the gas. See Citizens Southern Trust Co. v. Phillips Petroleum Co.,385 S.E.2d 426 (Ga.App. 1989). Also finding a similar duty, the New York Supreme Court Appellate Division established that liability might ensue if an oil company had notice, actual or constructive, of the underground loss of gasoline due to a leakage, but failed to prevent such resulting injury by continuing to supply the defective tanks with gasoline. See NewYork Tel. Co. v. Mobil Oil Corp., 473 N.Y.S.2d 172 (N.Y.App.Div. 198 4).
With no previous precedence established, we are unable to conclude that the courts in Nebraska would choose to follow the duties imposed by the jurisdictions named. In the instances cited where liability did attach, the supplier had notice of possible dangerous defects in the storage facility. Although, a storage facility may not be in compliance in with Title 198, this may or may not constitute a defect or immediate dangerous condition, which would give rise to a duty placed upon the non-owner supplier to refuse delivery.
In addition, the secondary containment requirements instituted pursuant to Title 198 are very precise and exacting depending on the aggregate quantities stored by the owner of the chemicals. It would be difficult for a firsthand observer to determine if a storage facility was in compliance, unless a detailed and time consuming measurement was taken of the capacity of the secondary containment unit. Given this difficulty, a non-owner supplier could in good faith — based upon his observations — deliver chemicals for storage onsite, but later discover that the facility was not in compliance with Title 198. A supplier would not have notice of compliance unless a method was instituted to provide proof that the storage facility was in compliance. Without such notice being achieved, it would be difficult for a court to conclude that a duty had been placed upon the supplier that restricted distribution to a noncompliant storage facility.
 CONCLUSION
Under Title 198 of the Nebraska Department of Environmental Quality rules and regulations for the containment of agricultural chemicals, there are no provisions which would place penalties upon a non-owner supplier who delivered chemicals to a storage facility that was not compliant. Possible tort liability actions may be instituted against the chemical supplier, which could result in liability if the chemical supplier knew or should have known that storage facility was inadequate, although there have, thus far, been no Nebraska Supreme Court decisions on this issue.
The Legislature could provide for a different result by the implementation of legislation that placed liability upon a supplier for depositing chemicals into a noncompliant storage facility. The legislation could also contain a means of providing notice to the supplier of the storage facility's compliance under Title 198.
Sincerely,
 DON STENBERG Attorney General
 Jason W. Hayes Assistant Attorney General
cc: Patrick J. O'Donnell Clerk of the Legislature
Approved:
Don Stenberg 
Attorney General